LA PIERRE, LITCHFIELD & PARTNERS, Respondent, v. CONTINENTAL CASUALTY COMPANY, Appellant.

First Department, July 15, 1969.

*Jack Hart* of counsel (*Hart & Hume,* attorneys), for appellant.

*Nathan Walker* of counsel (*Eisenberg & Weiss,* attorneys), for respondent.

STEVENS, P. J. This is an appeal by defendant from an interlocutory judgment entered upon an agreed submission to the court of the issue of liability. Involved is the construction of an architects' professional liability policy, effective September 11, 1959 to September 10, 1962, which provided, *inter alia,* that the defendant "company shall: (a) defend any suit, or Arbitration Proceedings against the insured alleging such error, omission or act and seeking damages thereof, even if such suit is groundless, false or fraudulent".

"IV. Policy Period, Territory.

"This policy applies only to errors, omissions or acts which occur within the United States of America * * * (a) during the policy period and then only if claim is first made against the insured during the policy period, or (b) which occurred prior to the effective date of the policy and then only if claim is made during the policy period provided: (1) *no insured had any knowledge of such prior error, omission or act at the effective date of the policy,* and (2)" (emphasis supplied).

November 9, 1954, the plaintiff insured entered into a contract with the Board of Education (Board) of a school district of Hempstead, Long Island, under which it undertook to perform professional services in connection with the planning and construction of two school buildings, etc. The agreement provided that plaintiff did not guarantee the work of contractors engaged by the Board, and that all disputes should be submitted to arbitration.

One of the buildings was sufficiently completed by September, 1958 to permit student use. Thereafter the Board complained of (1) overheating and under-heating of certain rooms; (2) inadequate ventilation of the boiler room, with inadequate air supply and air motion for efficient operation of the boilers, and (3) inadequate and inefficient outdoor lighting.

There was correspondence between the parties and efforts to adjust the conditions complained of, the cause of which could not be precisely determined. These efforts continued well into the effective term of the policy. However, on July 20, 1962, the Board instituted arbitration proceedings seeking damages of $1,758,000, asserting "the school buildings and the work referred to in said agreement was so planned and constructed that they were unsuitable, unfit and not properly usable for school purposes, with certain of the rooms and areas oppressively hot, stifling and stuffy, and lacking adequate ventilation

and air motion and with certain of the rooms and areas uncomfortably chilly and cold and with certain of the areas improperly, inadequately and inefficiently equipped with facilities for proper and sufficient illumination ''. While the notice of intention to arbitrate alleged noncompliance with the 1954 agreement, it did not allege prior knowledge by plaintiffs of the alleged failure or deficiency.

Notice was given defendant which supplied attorneys to represent plaintiff. This firm, Hicks & Corliss, examined one of the partners under oath, and in November, 1962 demanded a bill of particulars which the Board supplied. Such bill, dated January 25, 1963, identified the allegedly unsuitable areas, stated notice was given plaintiffs in September, 1958, and that plaintiffs continued to perform work '' pursuant to the terms of the said contract in an attempt to comply with the terms and conditions thereof until 1960.''

One session of the arbitration proceedings was held at which plaintiff was represented by Hicks & Corliss. Thereafter, on February 1, 1963, Hicks & Corliss, on behalf of defendant, disclaimed liability and, over plaintiff's objection, withdrew from the case. Plaintiff proceeded with its own counsel. By stipulation the outdoor lighting question was withdrawn from the proceedings and settled between the parties. The three arbitrators — one named by each party, the two selecting a third — unanimously rejected the claims of the Board and judgment was entered on the award.

Plaintiff then commenced this action to recover its counsel fees and the expenses incurred in the arbitration proceeding. The court found liability in favor of plaintiff and directed an assessment of damages. This appeal resulted.

The demand for arbitration, the pleading, asserted grounds which could fall within the terms of the policy and defendant recognized this in undertaking to defend. The award and judgment demonstrate, conclusively, that in point of fact plaintiff was not liable in damages because of any error, omission or act. If no error, omission or act existed which caused damage obviously plaintiff could not have prior knowledge thereof (cf. *Corbetta Constr. Co.* v. *Michigan Mut. Liab. Co.*, 20 A D 2d 375, affd. 15 N Y 2d 888).

Terms of a policy of insurance, if unambiguous, are to be construed in their ordinary sense (*Johnson* v. *Travelers Ins. Co.*, 269 N. Y. 401) and if an ambiguity exists, generally that is resolved against the creator of the instrument (*Hartol Prods. Corp.* v. *Prudential Ins. Co.*, 290 N. Y. 44; *Janneck* v. *Metropolitan Life Ins. Co.*, 162 N. Y. 574; *Bronx Sav. Bank* v.

*Weigandt*, 1 N Y 2d 545). The duty to defend is frequently broader than, and should be distinguished from, the liability to pay which is controlled by the facts actually found to exist. Mere knowledge of the existence of a claimed defect does not amount to knowledge of a defect or omission when none is found to exist. A mere claim does not establish a fact or prove the existence of a condition.

It does not appear what facts, if any, were learned by counsel supplied by defendant which caused them to withdraw after entering upon the defense of plaintiff. There might be here elements of estoppel and a presumption of prejudice to plaintiff by such withdrawal, but our determination is not rested on that basis. However, interest on any sum awarded plaintiff should run only from the date or dates of actual payment of the moneys paid by plaintiff for the services rendered or expenses incurred.

The judgment appealed from should be affirmed as to liability but modified to provide that interest shall run from the date or dates the payments were actually made or the expenses incurred. As so modified the judgment should be affirmed, with costs and disbursements to respondent.

McNALLY, J. (dissenting). I dissent and vote to dismiss the complaint.

The claims against plaintiff arose from errors, omissions or acts prior to the policy period. The majority are of the same opinion. The policy does not cover errors, omissions or acts which occurred prior to the effective date of the policy unless (1) the claim is made during the policy period and (2) plaintiff had no knowledge of such prior error, omission or act prior to the effective date. Here, the claims against plaintiff were made prior and not during the policy period and related to errors, omissions or acts prior to the effective date. In addition, plaintiff prior to the effective date had knowledge of the claimed errors, omissions or acts. Hence, said claims are not within the scope of the coverage. It is immaterial that plaintiff did not agree or believe or know that it had been derelict as claimed and that plaintiff prevailed on the issues thereafter adjudicated in arbitration. The coverage is in respect of " any claim made against the insured " and necessarily excludes any claim antedating the policy of which plaintiff had knowledge, regardless of its lack of merit.

EAGER, McGIVERN and STEUER, JJ., concur with STEVENS, P. J.; McNALLY, J., dissents in opinion.

Judgment affirmed as to liability but modified to provide that interest shall run from the date or dates the payments were actually made or the expenses incurred. As so modified, the judgment is affirmed, with $50 costs and disbursements to respondent.

Settle order on notice.